[Cite as *Lawless v. Lawrence Cty. Bd. of Edn.*, 2020-Ohio-117.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| TERESA LAWLESS, | : | Case No. 18CA25 |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | |
| v. | | DECISION AND |
| | : | JUDGMENT ENTRY |
| BOARD OF EDUCATION OF THE<br>LAWRENCE COUNTY<br>EDUCATIONAL SERVICE CENTER, | : | |
| | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | **RELEASED 01/09/2020** |

_____
APPEARANCES:

Doug Holthus, Stacy V. Pollock, and Cara M. Wright, Mazanec, Raskin & Ryder Co., L.P.A., Columbus, Ohio, for appellant/cross-appellee.

Dennis L. Pergram, Manos, Martin & Pergram Co., L.P.A., Delaware, Ohio, for appellee/cross-appellant.
_____
Hess, J.

{¶1} The Board of Education of the Lawrence County Educational Service Center (the "Board") terminated the employment contract of its treasurer, Teresa Lawless, after the state auditor's office issued a special audit report that included findings for recovery against her for illegally expended public monies. Lawless sued the Board for breach of contract provisions that we will refer to as the "duty to defend clause," the "leave time clause," and the "severance pay clause." The Board asserted counterclaims against her. The trial court granted the Board summary judgment on the claim for breach of the duty to defend clause but denied it summary judgment on Lawless' other claims. The court granted Lawless summary judgment regarding liability

with respect to the claims for breach of the leave time clause and severance pay clause. A jury awarded Lawless $359,944.10 on these claims and awarded the Board $1,370 on its counterclaims. The court entered judgment on these verdicts.

{¶2} The Board appeals and Lawless cross-appeals various decisions of the trial court. For the reasons that follow, we reverse the denial of summary judgment to the Board on the claim for breach of the severance pay clause, reverse the grant of partial summary judgment to Lawless on the claims for breach of the leave time clause and severance pay clause, and reverse the judgment on the verdicts regarding those claims. We remand for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

I. FACTS AND PROCEDURAL HISTORY

A. The Treasurer's Contract

{¶3} In 1998, the Lawrence County Educational Service Center ("ESC") hired Lawless as a secretary, and in 2002, she became its treasurer. Her most recent employment contract with the Board was for the period from August 1, 2013, to July 31, 2018. Pursuant to that contract, Lawless agreed to among other things, furnish a "valid and appropriate certificate" to act as treasurer and perform the duties of treasurer "as prescribed by the laws of the State of Ohio and by the rules, regulations and position description adopted by the Board." The contract guaranteed an annual salary plus an annual cost of living adjustment ("COLA") and permitted the Board to authorize additional salary increases. The contract provided that Lawless would receive 20 vacation days annually and "earn and accumulate sick leave as authorized by Board

policy." She could "convert up to ten (10) days of previously accrued vacation for cash payment per year."

**{¶4}** The contract included a duty to defend clause which stated:

> The Board further will defend, indemnify, and hold harmless the Treasurer from any and all demands, claims, suits, actions and legal proceedings brought against the Treasurer in his [sic] individual or official capacity as agent and employee of [ESC], arising from acts or omissions occurring while the Treasurer was acting with [sic] the scope and course of his [sic] employment.

**{¶5}** In addition, the contract included a leave time clause which stated:

> Upon separation from employment of [ESC], the Treasurer shall be entitled to full pay at her current per diem rate of unlimited days of her accumulated and unused sick and vacation leave with [ESC] as of the date of separation. This severance pay shall be paid upon any separation from employment and is not limited to separation for retirement purposes, unless convicted of criminal behavior in the performance of her duties.

**{¶6}** The contract provided that "the Treasurer shall be subject to the termination of this contract in accordance of [sic] Ohio Law." However, she "shall have the right to service of written charges, a hearing before the Board after reasonable notice, to be represented by counsel and such other rights as may be provide [sic] by law." It also included a severance pay clause which stated:

> If terminated prior to the end of the five-year agreement, the Treasurer will be compensated in full for the unpaid balance.

**{¶7}** The Board approved amendments to the contract. The Board authorized additional compensation. The Board also made Lawless eligible for the same annual performance incentive as the superintendent, which depended on the "unencumbered balance in the general fund(s)." In addition, the Board increased the number of vacation days Lawless could convert to cash per year from 10 to 20 days for a three-year period.

### B. Events Leading to Termination of the Treasurer's Contract

**{¶8}** On August 1, 2013, Lawless became treasurer of the Lawrence County Academy ("LCA"), a virtual community school sponsored by ESC. ESC paid Lawless $500 a month to do this job using LCA funds. The state auditor's office initiated a regular audit of LCA for fiscal years 2014 and 2015. On October 29, 2015, the auditor's office declared LCA's financial records unauditable pursuant to R.C. 117.41. Lawless tendered her resignation as LCA treasurer effective December 1, 2015, and that day, the Board voted to "remove the fiscal service responsibility from the ESC treasurer for [LCA]."

**{¶9}** While performing ESC's fiscal year 2014 audit, the auditor's office identified concerns with the employment contracts for the superintendent and treasurer and initiated a special audit of ESC. The objectives were to examine service agreements between ESC and local school districts, compensation paid to the superintendent and treasurer, non-payroll disbursements to the superintendent and treasurer, credit card transactions by the superintendent and treasurer, and the treasurer's leave time. On December 8, 2015, the auditor's office issued a subpoena to ESC for records related to these objectives, and the Board placed Lawless on paid administrative leave.

**{¶10}** In 2017, the auditor's office issued its special audit report, which included findings for recovery against Lawless for $38,493. The report found that from August 2013 to April 2016, Lawless received overpayments of her salary and bonuses totaling $28,486 because her calculations of those items erroneously included an incorrect rate for her 2013 COLA, her LCA salary, and an unapproved bonus. The report found that

Lawless had converted some vacation days to cash at an incorrect rate and had converted 40 days to cash during fiscal year 2015 when she could only convert 20 days to cash that year, resulting in overpayments totaling $9,301.  The report also found that Lawless did not use leave time on 16 days she was not at work as evidenced by personal credit card statements.  The report recommended that the Board adjust her vacation leave balance to account for these days and the contract cap of 60 days.  In addition, the report found that Lawless improperly received reimbursement for $552 in expenses incurred travelling to ESC in the evenings and on weekends and improperly used an ESC credit card to purchase $154 worth of candles and fragrance products.  The report also included findings for recovery against former superintendent Dr. James Payne for $6,664 due to overpayment of a bonus and receipt of a duplicate travel expense reimbursement.

**{¶11}** The auditor's office also "reported an abuse of public funds related to performance incentives paid to Ms. Lawless totaling $169,674 and to Dr. Payne totaling $87,793."  It did not issue findings for recovery for those amounts.  Instead, the special audit report observed that the contract language on the performance incentive "did not clearly define the word 'unencumbered' nor did it clearly define which general fund balance(s) were to be used in the calculation of the performance incentive." This allowed Lawless to "maximize" the performance incentive payments "using her interpretation of the contract language."  She "determined to calculate the performance incentives using the general fund balance reported on the ESC's financial statements which are presented on a modified accrual basis."  This resulted in higher payments than if she had used ESC's cash basis financial summary reports.  The report also

stated that the performance incentives "had no relationship to [Lawless'] actual performance" and

> could be perceived as creating an incentive for the Treasurer to not perform duties in the best interest of the ESC, such as returning unused funds for member school districts or not paying other liabilities in a timely fashion in an effort to keep a larger general fund balance intact, and thus supporting a higher performance incentive to be paid.

The report noted Dr. Payne's contract had been amended at his request to remove the performance incentive and recommended the Board review Lawless' contract to determine if her performance incentive was appropriate.

**{¶12}** Regarding service agreements between ESC and school districts, the report explained the agreements "did not address how the ESC would expend any unused funds received from the service agreements and allowed the ESC to distribute the unused funds however they [sic] wanted." ESC did not expend $380,872 it received for special education services. The money "was accounted for in the ESC's general fund balances which ultimately increased performance incentives paid to the superintendent and treasurer." The report recommended service agreements "clearly define how to distribute any unused funds."

**{¶13}** On April 10, 2017, the Board gave Lawless notice of disciplinary charges that it claimed constituted grounds to terminate her contract "for good and just cause" if true. The notice explained that the Board would conduct a pre-disciplinary hearing and that Lawless could appear at the hearing with counsel and respond to the charges. Three days later, the Board conducted the hearing at which Lawless appeared and submitted a written response to the charges. The Board suspended her without pay or benefits and adopted a resolution of its intent to consider termination of her contract.

The Board advised Lawless that she had 10 days to file a written demand for a hearing before the Board or a referee. Lawless did not exercise that right, and on May 31, 2017, the Board adopted a resolution to terminate her contract pursuant to R.C. 3319.16.

### C. Legal Proceedings

**{¶14}** On May 25, 2017, Lawless filed a complaint against the Board asserting claims for breach of the duty to defend clause, leave time clause, and severance pay clause.[1] The Board filed an answer and counterclaims for breach of contract, fraud, and breach of fiduciary duty. After discovery began, the Board moved to stay it until the auditor's office completed other audits of ESC. The court denied the motion. Next, the Board moved for an extension of all court deadlines to "accommodate" the fact that the auditor had not yet completed fiscal year 2014, 2015, and 2016 audits of ESC. The Board proposed a new case schedule that changed the trial date from March 2018 to "October 2018 or thereafter." After the court issued a revised scheduling order with a May 2018 trial date, the Board withdrew its motion.

**{¶15}** Lawless moved for summary judgment on the issue of liability with respect to her claims for breach of the leave time clause and severance pay clause. The Board opposed the motion and moved for summary judgment on all claims and counterclaims. The trial court granted Lawless' motion and denied the Board's subsequent motion for reconsideration of that decision. The court denied the Board's motions for summary judgment. The matter proceeded to a jury trial on the issue of damages for the claims for breach of the leave time clause and severance pay clause and on the counterclaims.

---

[1] Lawless later withdrew other claims not relevant here.

The parties agreed that the court would resolve the liability portion of Lawless' claim for breach of the duty to defend clause in post-trial motions for summary judgment.

{¶16} The jury awarded Lawless $122,054.10 for breach of the leave time clause and $237,890 for breach of the severance pay clause. It found "in favor of [the Board] and against [Lawless] on [the Board's] Counterclaim" and awarded the Board $1,370. Consistent with the verdicts, the court entered judgment in favor of Lawless for $359,944.10 and in favor of the Board for $1,370.

{¶17} The Board moved for a new trial pursuant to Civ.R. 59(A)(8) on the basis of newly discovered evidence because after trial, the auditor rescinded Auditor of State awards ESC had received for fiscal years 2012 and 2013, which the trial court had admitted into evidence. The basis for rescission was that the auditor's office "became aware of information related to misrepresentation, fraud and/or illegal procedures by [ESC] and/or its principal officers." The trial court denied the motion. The Board moved for reconsideration of that decision, asserting it had additional newly discovered evidence. After trial, Dr. Payne voluntarily repaid his performance incentives even though at trial, Dr. Payne testified that he felt he had earned the incentives. The court denied the motion.

{¶18} The court denied Lawless' post-trial motion for summary judgment regarding liability with respect to the claim for breach of the duty to defend clause but granted the Board's motion. Lawless claimed the Board had a duty to defend her with respect to the special audit but did not, and as a result, she incurred legal fees. The court concluded that the special audit was "of the entity known as the ESC," not an audit of Lawless, so "her decision to retain independent legal counsel did not result from an

action brought against the Treasurer in her individual or official capacity." This appeal

and cross-appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶19} The Board presents four assignments of error[2]:

1. The trial court committed prejudicial error by granting Plaintiff/Appellee's Motion for Summary Judgment as to Liability under the First and Second Claims for Relief and denying the ESC's Motion for Summary Judgment.

2. The jury's verdict on Defendant/Appellee's Counterclaim was against the manifest weight of the evidence.

3. The trial court committed prejudicial error by failing to stay matter [sic] until the audit of the Ohio Auditor of State had been completed.

4. The trial court erred in denying Defendant/Appellant's Motions for New Trial based upon newly discovered evidence.[3]

{¶20} Lawless presents one cross-assignment of error: "The trial court committed prejudicial error by granting Defendant/Appellant Summary Judgment on Plaintiff/Cross-Appellant's Fifth Claim for Relief and by not Granting Summary Judgment for Plaintiff/Cross-Appellant * * *."

{¶21} For ease of discussion, we address the assignments of error out of order.

## III. DUTY TO DEFEND CLAUSE

{¶22} In her cross-assignment of error, Lawless contends that the trial court erred when it granted the Board summary judgment and denied her summary judgment on her claim for breach of the duty to defend clause. Lawless maintains that the special

---

[2] The assignments of error were taken from Section I of the appellant's brief. Some of the assignments of error are worded differently in other parts of the brief.

[3] The Board failed to argue its third and fourth assignments of error separately as required by App.R. 16(A)(7). Thus, it would be within our authority to summarily overrule those assignments of error. *Ogle v. Kroger Co.*, 4th Dist. Hocking No. 13CA22, 2014-Ohio-1099, ¶ 14, citing App.R. 12(A)(2). Nevertheless, we will address the merits of the Board's arguments.

audit triggered the duty to defend because it constituted an action brought against her as evidenced by the fact that the special audit resulted in findings for recovery against her. Lawless asserts that the Board failed to fulfill its duty to defend and that she is entitled to reimbursement for legal expenses she incurred to defend against the special audit.

{¶23} In *Gardner v. Paxton*, 4th Dist. Washington No. 18CA13, 2018-Ohio-4586, we explained:

> Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made, and (3) the moving party is entitled to judgment as a matter of law.
>
> The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. Once the moving party meets this initial burden, the nonmoving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial.

(Citations omitted.) *Id.* at ¶ 15-16.

{¶24} Even if a special audit qualified as an "action" for purposes of the duty to defend clause, it was not "brought against" Lawless; rather, the auditor conducted a special audit of ESC in accordance with the auditor's statutory authority to audit public offices. *See* R.C. 117.11(B) (the auditor of state "may conduct an audit of a public office at any time * * * upon the auditor of state's own initiative if the auditor of state has reasonable cause to believe that an additional audit is in the public interest"). Lawless' reliance on the findings for recovery is misplaced. R.C. 117.28 states: "Where an audit

report sets forth that any public money has been illegally expended * * * the officer receiving the certified copy of the report * * * may * * * institute civil action * * * in the name of the public office to which the public money is due * * * for the recovery of the money[.]" Thus, the findings for recovery gave ESC the right to bring an action against Lawless for the recovery of money; the findings did not somehow convert the special audit itself into an action brought against Lawless.

{¶25} The Board did not have a duty to defend Lawless in connection with the special audit. The trial court correctly granted summary judgment in favor of the Board and against Lawless on her claim for breach of the duty to defend clause. We overrule the cross-assignment of error.

### IV. MOTIONS TO DELAY PROCEEDINGS

{¶26} In its third assignment of error, the Board contends that the trial court abused its discretion when it denied the motions to stay discovery and extend, i.e., continue, all court deadlines to allow for completion of audits of ESC for fiscal years during which Lawless had served as treasurer. The Board asserts that if these motions had been granted, the trial would have occurred after the auditor had rescinded awards to ESC and after Dr. Payne had repaid his performance incentives, so this evidence would have been available to the jury. The Board also claims that after trial, the auditor made additional findings for recovery that it was unable to present to the jury.

{¶27} Generally, an appellate court will not disturb a trial court's decision to deny a stay or a continuance absent an abuse of discretion. *State ex rel. Charvat v. Frye*, 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, ¶ 16 (denial of stay); *State v. Hunt*, 4th Dist. Scioto No. 17CA3811, 2018-Ohio-4183, ¶ 41 (denial of continuance). An

abuse of discretion occurs when a court "acts in an unreasonable, arbitrary, or unconscionable manner." *Charvat* at ¶ 16. The Supreme Court of Ohio has stated:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981). "Although *Unger* was a criminal matter, appellate courts have also applied these factors in civil cases." *In re A.B.*, 4th Dist. Athens No. 18CA13, 2019-Ohio-90, ¶ 27. The Supreme Court of Ohio has also considered similar factors in evaluating a motion for stay. *See State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 20.

## A. Motion to Stay Discovery

{¶28} The trial court's decision to deny the motion to stay discovery was not unreasonable, arbitrary, or unconscionable. Although the motion was the Board's first request to delay the proceedings, it requested an indefinite stay until the completion of audits of ESC. As the Board points out, some of these audits were still pending at the time of trial, over a year after Lawless filed her complaint. An indefinite stay would have inconvenienced Lawless, who represented to the court that she did not need the audit results to conduct discovery on her claims. The Board is correct that it lacked authority to control the manner or speed of the auditor's work. However, while it may have been convenient for the Board to use the auditor's work on the other audits in this case, the Board does not assert that the auditor possessed factual information about ESC's finances that the Board could not access until the audits were complete. In addition,

when the court denied the stay, it could not have predicted that the auditor would rescind awards to ESC or that Dr. Payne would repay his performance incentives after trial. Moreover, the Board's argument regarding additional findings for recovery against Lawless made after trial relies on facts outside the record on appeal.

{¶29} The court did not abuse its discretion when it denied the motion to stay discovery. We overrule the third assignment of error to the extent it asserts otherwise.

### B. Motion to Extend Court Deadlines

{¶30} The contention that the trial court erred by denying the motion to extend all court deadlines is not well taken because the Board withdrew the motion before the court ruled on it. The Board claims that at a November 30, 2017 hearing, the court "informed the ESC that the motion would be denied and instructed the ESC to withdraw the Motion." While the record reflects that the Board withdrew its motion "pursuant to the November 30, 2017 hearing," the record does not indicate what happened at this hearing because the Board failed to order a transcript of it. The Board instructed the court reporter only to "prepare transcripts of the trial held on May 29, 2018 – June 1, 2018." "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Id.* Accordingly, we overrule the third assignment of error with respect to the motion to extend.

### V.  LEAVE TIME AND SEVERANCE PAY CLAUSES

{¶31}  In its first assignment of error, the Board contends that the trial court erred when it granted summary judgment to Lawless regarding liability with respect to her claims for breach of the leave time clause and severance pay clause and when it denied the Board summary judgment on those claims. The Board asserts the treasurer's contract is illusory due to lack of consideration, the leave time clause and severance pay clause are void as against public policy, the clauses are unenforceable penalties, the clauses are unconscionable, and Lawless cannot recover for breach of contract because she did not perform under the contract.

{¶32}  We set forth the summary judgment standard of review in Section III.

### A.  Lack of Consideration

{¶33}  The Board asserts that under Lawless' interpretation of the treasurer's contract, it lacks consideration and is illusory because she is entitled to "the full denominated pay and benefits described for the entire five-year period, *regardless* of whether or not she actually performed."  Thus, the Board asserts the contract is "not supported by an obligation of performance."

{¶34}  " ' "A contract is generally defined as a promise, or a set of promises, actionable upon breach.  Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." ' "  *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 14, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams* at ¶ 16. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* Whether consideration exists "is a proper question for a court." *Id.* at ¶ 17.

**{¶35}** "A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys [the] promise and thus makes it merely illusory." *Imbrogno v. Mimrx.com, Inc.*, 10th Dist. Franklin No. 03AP-345, 2003-Ohio-6108, ¶ 8. " ' "An apparent promise which according to its terms makes performance optional with the promisor * * * is in fact no promise[.]" ' " (Omission in *Andreoli.*) *Id.*, quoting *Andreoli v. Brown*, 35 Ohio App.2d 53, 55, 299 N.E.2d 905 (9th Dist.1972), quoting Restatement of the Law, Contracts, Section 2, Comment b (1925). Because illusory contracts are not enforceable, courts should interpret a contract " 'to avoid a result which renders the contract illusory.' " *Hartman v. Erie Ins. Co.*, 2017-Ohio-668, 85 N.E.3d 454, ¶ 51 (6th Dist.), quoting *State v. Stanley*, 7th Dist. Mahoning No. 99-C.A.-55, 2002-Ohio-4372, ¶ 22.

**{¶36}** The treasurer's contract was not illusory. Lawless promised, among other things, to furnish a "valid and appropriate certificate" to act as treasurer and to perform the duties of treasurer in accordance with Ohio law and the rules, regulations, and position description adopted by the Board. She did not have an unlimited right to determine the nature or extent of her performance that made her performance optional. Rather, she had a duty to perform until the contract ended by its terms or the Board

terminated her contract in accordance with law. The fact that a termination triggered provisions that favored Lawless did not render her promises illusory. So long as consideration exists, a court may not inquire into its adequacy. *Williams* at ¶ 17. Accordingly, we overrule the first assignment of error to the extent it asserts the treasurer's contract was illusory.

### B. Public Policy

**{¶37}** The Board contends that the leave time clause and severance pay clause are unenforceable because they violate public policy. The Board asserts that public policy supports the termination of public employees who fail to perform their duties as evidenced by R.C. 3319.16, that it terminated Lawless pursuant to that statute, and that public policy dictates that such an employee not receive compensation for time not worked.

**{¶38}** In *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, the Supreme Court of Ohio stated:

> The freedom to contract is a deep-seated right that is given deference by the courts.
>
>    This deference, however, is not absolute. We have observed that the " '[l]iberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare. * * * The public welfare is safeguarded, not only by Constitutions, statutes, and judicial decisions, but by sound and substantial public policies underlying all of them.' " *J.F. v. D.B.*, 116 Ohio St.3d 363, 2007-Ohio-6750, 879 N.E.2d 740, ¶ 5, quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney*, 95 Ohio St. 64, 115 N.E. 505 (1916), syllabus. In fact, this court explained almost 200 years ago that "the right of making contracts at pleasure is a personal privilege of great value, and ought not to be slightly restrained; but it must be restrained when contracts are attempted against the public law, general policy, or public justice." *Key v. Vattier*, 1 Ohio 132, 147 (1823). The question becomes, when is it appropriate to apply the principle of the public-policy exception so as not to infringe on the parties' rights to make contracts?

While the public-policy exception has existed for over a hundred years, courts applying it have struggled to determine what public policy is. " 'Public policy' is the community common sense and common conscience extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." *Kinney*, 95 Ohio St. at 64, 115 N.E. 505. " 'Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy.' " *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 64, quoting Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980). * * * Our duty is to determine when the public-policy exception must be recognized, but it is the "legislative branch [that] is 'the ultimate arbiter of public policy.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21.

(Alterations sic.)  *Id.* at ¶ 15-17.  In determining whether the public-policy exception applies, we must examine whether the clauses at issue accomplish "a result that the state has sought to prevent" or "something that the state seeks to facilitate."  *See id.* at ¶ 17.

## 1.  Severance Pay Clause

**{¶39}** The Board did not have an unlimited right to terminate the treasurer's contract; rather, the Board could only terminate the contract "in accordance of [sic] Ohio law."  R.C. 3313.22(F) states:  "A governing board of an educational service center * * * shall appoint a treasurer in the manner prescribed in this section for city, local, and exempted village school districts."  R.C. 3313.22(A) requires a "written contract of employment with the treasurer."  Pursuant to R.C. 3313.22(E), unless the treasurer is automatically disqualified from service, "termination of a treasurer's contract shall be in

accordance with section 3319.16 of the Revised Code." Thus the Board could only terminate the contract in accordance with R.C. 3319.16.

{¶40} R.C. 3319.16 authorizes termination of an employment contract only for "good and just cause." The statute provides the employee with certain rights including the right to written notice of the proposed grounds for termination, the right to demand a hearing before the employing board or a referee, the right to be represented by counsel at the hearing, and the right to appeal a termination order in common pleas court. R.C. 3319.16. The Board terminated Lawless pursuant to R.C. 3319.16, and she did not appeal her termination in accordance with that statute.

{¶41} The severance pay clause accomplishes a result the state has sought to prevent. The General Assembly has declared that it is

> the public policy and a public purpose of the state to require fiscal integrity of school districts so that they can educate children, pay when due principal and interest on their debt obligations, meet financial obligations to their employees, vendors, and suppliers, and provide for proper financial accounting procedures, budgeting, and taxing practices. The failure of a school district to so act is hereby determined to affect adversely the health, safety, and welfare not only of the people of the school district but also of other people of the state.

R.C. 3316.02(A). A school district includes an educational service center. R.C. 3311.055 ("Wherever in Title XXXIII of the Revised Code the term 'school district' is used without expressly referring to city, local, exempted village, or joint vocational school districts, or some specific combination thereof, the term shall be construed to include educational service centers"). Providing an employee of an educational service center who is terminated pursuant to R.C. 3319.16 with compensation for the unworked portion of the terminated contract is inconsistent with the preservation of the fiscal integrity of the educational service center. It is also inconsistent with public policy as

expressed in the Unemployment Compensation Act, which provides individuals with benefits as compensation for loss of remuneration due to involuntary unemployment but generally does not apply to an individual who is "discharged for just cause." R.C. 4141.29(D)(2)(a). The rationale for this exclusion is that "[w]hen an employee is at fault, [the employee] is no longer the victim of fortune's whims, but is instead directly responsible for [the employee's] own predicament." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697-698, 653 N.E.2d 1207 (1995).

**{¶42}** For these reasons, we conclude that the severance pay clause violates public policy and is unenforceable, and we sustain the first assignment of error to the extent it raises this issue. With respect to the claim for breach of the severance pay clause, we reverse the grant of partial summary judgment to Lawless, the $237,890 judgment in favor of Lawless, and the denial of summary judgment to the Board. We remand for the court to enter summary judgment in favor of the Board on this claim.

**{¶43}** This decision does not impact the enforceability of the remainder of the treasurer's contract, which contains a savings clause stating: "If any portion of this contract is deemed to be illegal due to conflict with state or federal law, the remainder of the contract shall remain in full force and effect." This decision does, however, render moot the Board's other arguments in the first assignment of error to the extent they relate to the severance pay clause, so we need not address them. *See* App.R. 12(A)(1)(c). However, we will address the Board's remaining arguments in the first assignment of error to the extent they pertain to the leave time clause.

## 2. Leave Time Clause

**{¶44}** The vacation leave portion of the leave time clause accomplishes a result the state has sought to facilitate. Lawless directs us to R.C. 3313.24(C), which applies to certain educational service center governing boards and states:

> (C) The board may establish vacation leave for its treasurer. Upon the treasurer's separation from employment, the board may provide compensation at the treasurer's current rate of pay for all lawfully accrued and unused vacation leave to the treasurer's credit at the time of separation, not to exceed the amount accrued during the three years before the date of separation.

Consistent with this statute, the leave time clause provided Lawless with compensation at her current per diem rate for accumulated and unused vacation leave at the time of separation unless she was convicted of a crime in connection with her job performance. Pursuant to the treasurer's contract, Lawless could "accumulate to a maximum of sixty days" of vacation leave, i.e., the amount of vacation leave that she would accrue every three years.[4]

**{¶45}** The sick leave portion of the leave time clause also accomplishes a result the state has sought to facilitate. Lawless directs us to R.C. 124.39(C), which states:

> (C) A political subdivision may adopt a policy allowing an employee to receive payment for more than one-fourth the value of the employee's unused sick leave or for more than the aggregate value of thirty days of the employee's unused sick leave * * *. The political subdivision may also adopt a policy permitting an employee to receive payment upon a termination of employment other than retirement * * *.

Thus, the statute permits a policy allowing an employee to receive the full value of an unlimited number of days of unused sick leave upon any termination of employment. Consistent with this statute, the leave time clause provided Lawless with compensation

---

[4] The Board does not raise the issue on appeal, but it appears the jury awarded Lawless compensation for 77.402 days of accrued and unused vacation leave.

for the full value of her accumulated and unused sick leave after any separation from employment unless she was convicted of a crime in connection with her job performance.

**{¶46}** For these reasons, we conclude that the leave time clause did not violate public policy and overrule the first assignment of error to the extent it asserts otherwise.

## C. Liquidated Damages

**{¶47}** The Board contends that the leave time clause was an unenforceable penalty rather than a valid provision for liquidated damages.

**{¶48}** "[L]iquidated damages are damages that the parties to a contract agree upon, or stipulate to, as the actual damages that will result from a future breach of the contract." *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 11. "Ohio has long recognized liquidated-damages provisions as valid and enforceable * * * as long as the provisions are not ones for penalties." *Id.* at ¶ 16. "[A] 'penalty' is ' "a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment." ' " *Id.* at ¶ 17, quoting *Piper v. Stewart & Inlow*, 5th Dist. Licking No. CA-2530, 1978 WL 217430, *1 (June 14, 1978), quoting 22 American Jurisprudence 2d, Damages, Section 213, at 298 (1965). The question "whether a contract clause provides for liquidated damages or an unenforceable penalty is a question of law that we * * * review de novo." *Id.* at ¶ 10.

**{¶49}** The leave time clause is not a liquidated damages clause or an unenforceable penalty because it was not an agreement by one party to pay a

stipulated sum if that party breached the contract. The leave time clause required the Board to compensate Lawless for accumulated and unused leave upon any separation from employment so long as she was not convicted of a crime in connection with her job performance. Thus, the Board had an obligation to compensate Lawless for leave time earned during the course of employment even if she quit or her contract expired by its terms. In other words, the leave time clause applied regardless of whether the Board breached the contract. Thus, we overrule the first assignment of error to the extent it asserts the leave time clause constituted an unenforceable penalty.

### D. Unconscionability

**{¶50}** The Board contends that the leave time clause is unconscionable because it "went well beyond what any statute provides," and there is "no valid public purpose" or "benefit to the Board" to pay a terminated employee for accumulated but unused sick and vacation leave. The Board relies on *Satterfield v. Adams Cty./Ohio Valley School Dist.*, 4th Dist. Adams No. 95CA611, 1996 WL 655789 (Nov. 6, 1996), to support its claim.

**{¶51}** Unconscionability is an affirmative defense to a breach of contract claim. *Deutsche Bank Natl. Trust Co. v. Pevarski*, 187 Ohio App.3d 455, 2010-Ohio-785, 932 N.E.2d 887, ¶ 29 (4th Dist.). The determination whether a contract is unconscionable presents a question of law. *Id.* at ¶ 31. However, the determination requires " 'a factual inquiry into the particular circumstances of the transaction in question.' " *Id.*, quoting *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 13 (9th Dist.). The party asserting unconscionability must establish both procedural and substantive unconscionability. *Id.* Substantive unconscionability refers

to " ' "unfair and unreasonable contract terms," ' " whereas procedural unconscionability refers to circumstances " ' "such that no voluntary meeting of the minds was possible." ' " *Id.*, quoting *Beneficial Mtge. Co. of Ohio v. Leach*, 10th Dist. Franklin No. 01AP-737, 2002-Ohio-2237, ¶ 57, quoting *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (2d Dist.1996).  In *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, the Supreme Court of Ohio explained:

> Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' " 'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.' " [*Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (1993)], quoting *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268.  "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

(First and third alteration sic.)  *Id.* at ¶ 44.

**{¶52}** The Board's unconscionability argument is not well taken.  *Satterfield* is inapposite because it discussed unconscionability in the context of whether a contract clause that required an employer to fulfill all financial obligations in the contract if it terminated the employee early provided for liquidated damages or an unenforceable penalty.  *Satterfield*, 4th Dist. Adams No. 95CA611, 1996 WL 655789, at *6-7. *Satterfield* did not consider a clause similar to the leave time clause or the affirmative

defense of unconscionability and its requirement for procedural and substantive unconscionability. In this case, the Board's argument focuses on substantive unconscionability and does not address procedural unconscionability. Therefore, the Board cannot prevail on its affirmative defense of unconscionability, and we overrule the first assignment of error to the extent it asserts the leave time clause is unconscionable.

### E. Performance

**{¶53}** Next, the Board contends that even if the treasurer's contract is enforceable, Lawless failed to produce any summary judgment evidence to establish an essential element of a breach of contract action—performance by her. The Board asserts that it submitted evidence that Lawless did not substantially perform, so either genuine issues of material fact exist regarding its liability or the Board was entitled to summary judgment on the claim for breach of the leave time clause.

**{¶54}** " ' "In order to succeed on a breach of contract claim, a party must prove the existence of a contract, *the party's performance under the contract*, the opposing party's breach, and resulting damage." ' " (Emphasis added.) *S.P. Drilling Services, Inc. v. Cooper's Excavating LLC*, 4th Dist. Adams No. 17CA1058, 2019-Ohio-55, ¶ 15, quoting *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 36 (4th Dist.), quoting *DePompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20. " 'Where a plaintiff seeks to recover damages for breach of contract, the burden is upon [the plaintiff] to show either substantial performance or tender of performance of the conditions on [the plaintiff's] part to be performed.' " *Cashland Fin. Servs., Inc. v. Hoyt*, 9th Dist. Lorain No. 12CA010232, 2013-Ohio-3663, ¶ 8, quoting *Thomas v. Matthews*, 94 Ohio St. 32, 113 N.E. 669 (1916), syllabus. " 'In the law of contracts, "substantial

performance" is [an] approximation of full performance such that the parties obtain, in the main, what the contract called for, although it is not complete and final performance in every particular.' " (Alteration sic.) *Fifth Third Bank v. Ducru Ltd. Partnership*, 1st Dist. Hamilton No. C-050564, 2006-Ohio-3944, ¶ 17, quoting *Stone Excavating, Inc. v. Newmark Homes, Inc.*, 2d Dist. Montgomery No. 20307, 2004-Ohio-4119, ¶ 13. "A party is in substantial compliance with its promises when its deviations are nominal, trifling, technical, slight, and consistent with an honest effort to perform." *Id.* at ¶ 18. "For the doctrine of substantial performance to apply, the unperformed duties must not destroy the value or purpose of the contract." *Id.* If the "facts are undisputed, whether a party's conduct constitutes substantial performance is a question of law for the court." *Id.*

**{¶55}** Neither party was entitled to summary judgment with respect to the claim for breach of the leave time clause. In her motion for summary judgment regarding liability, Lawless did not address the element of performance by the plaintiff or identify parts of the record that demonstrated the absence of a genuine issue of material fact with respect to that element. The Board asserts that it is "not disputed" that Lawless "failed to perform, properly" her duties pursuant to R.C. 3313.29,[5] but the Board did not cite any part of the record to support this assertion. *See* App.R. 16(A)(7) (appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review * * * with citations to the * * * parts of the record on which appellant relies"). The Board also asserts that "[i]f nothing else," the special audit report and charges described in Lawless' termination notice, which were exhibits to Lawless' deposition, demonstrate her failure to perform prior to

---

[5] The Board quoted this statute in its appellant's brief but mistakenly cited R.C. 3313.31.

her termination. However, Lawless disputed the auditor's findings and many of the charges in her deposition testimony and other exhibits to her deposition. For example, Lawless performed her own calculations of her compensation, which excluded her LCA salary even though it appeared on her W-2 from ESC and board members had instructed her to include it, and determined the overcompensation totaled at most $1,371. Lawless also explained that she did not improperly take vacation without using leave time because she made up the time by working on days she was not normally scheduled to work. She testified some board members knew about this "exchange day" system and approved of it.

{¶56} Genuine issues of material fact existed with respect to whether Lawless substantially performed prior to her termination such that she could prevail on her claim for breach of the leave time clause. Accordingly, we sustain the first assignment of error to the extent it asserts that the trial court erred when it granted Lawless partial summary judgment on this claim and overrule the first assignment of error to the extent it asserts that the court erred when it denied the Board summary judgment on this claim. We reverse the grant of partial summary judgment to Lawless on this claim, reverse the $122,054.10 judgment in favor of Lawless with respect to this claim, and remand for further proceedings consistent with this decision.

## VI. COUNTERCLAIMS

{¶57} In its second assignment of error, the Board contends that the jury found in its favor "on each and every one" of its three counterclaims and that the damages award is against the manifest weight of the evidence. The Board maintains that it "presented sufficient and largely uncontroverted evidence" that it sustained $322,254 in

damages, which includes the $38,493 in findings for recovery in the special audit report, $169,674 in performance incentives, $84,687 paid to interim treasurers while Lawless was on paid administrative leave, and $29,100 for the cost of the special audit.[6]   The Board asserts that pursuant to R.C. 117.36, the auditor's "findings of Lawless' financial misdeeds in office should have been accepted by the court and jury as prima-facie evidence" of the Board's counterclaims but "were completely disregarded by the jury."  It argues that the special audit report demonstrates that Lawless overpaid herself, cashed out more days of unused vacation leave than her contract permitted, and improperly deposited money earmarked for special education services into ESC's general fund resulting in excessive performance incentives.  The Board asserts that Brenda Hill, ESC's current treasurer, explained to the jury how Lawless inflated the balance of the general fund by improperly coding cost centers to it.  The Board also claims that the cost of the special audit is attributable to Lawless and that because Lawless breached the treasurer's contract, it "was obligated to, and did," hire interim treasurers during her paid administrative leave.

{¶58} In *Wootten v. Culp,* 4th Dist. Adams No. 16CA1026, 2017-Ohio-665, we explained:

> When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

> Moreover, when reviewing the evidence under this standard, we are aware that the weight and credibility of the evidence are to be determined by the trier of fact; we thus defer to the trier of fact on these issues because it is in the best position to gauge the witnesses'

---

[6] These amounts total $321,954, not $322,254.

demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. The trier of fact is free [to] believe all, part, or none of any witness's testimony.

Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the decision.

(Citations omitted.) *Id.* at ¶ 19-21.

**{¶59}** The verdict form on the counterclaims stated that the jury found "in favor of [the Board] and against [Lawless] on [the Board's] Counterclaim." This was a general verdict, i.e., one "by which the jury finds generally in favor of the prevailing party." Civ.R. 49(A). It was not tested by interrogatories as permitted by Civ.R. 49(B). Even if the jury had found in favor of the Board on all three of its counterclaims, the Board accused Lawless of multiple instances of misconduct, and the specific conduct that formed the basis for the jury's verdict is unknown. As Lawless suggests, the jury may have found her only actionable misconduct related to overpayment of compensation, which she calculated to be at most $1371, and used her calculations to formulate the $1,370 damages award.

**{¶60}** R.C. 117.36 did not require a judgment in favor of the Board regarding the findings for recovery against Lawless or her performance incentives. R.C. 117.36 provides that "[a] certified copy of any portion of the [auditor's] report containing factual information is prima-facie evidence in determining the truth of the allegations of the petition." " 'Prima facie evidence' is not conclusive. The term denotes evidence which will support, *but not require*, a verdict in favor of the party offering the evidence." (Emphasis added.) *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64, 567 N.E.2d 1291 (1991).

**{¶61}** The jury did not lose its way or create a manifest miscarriage of justice when it failed to award the Board damages based on the findings for recovery. During trial, Lawless highlighted the fact that the auditor's calculations of her authorized compensation ignored the fact that her contract provided an annual COLA, not just a COLA in 2013. They also ignored a $1,422 underpayment in a prior year. Lawless provided the jury with her own calculations, which included an annual COLA and a $1,400 credit for the underpayment. She calculated the overpayment of compensation as at most $1,371 if her LCA salary was excluded. Regarding vacation leave, even if the jury found that Lawless improperly converted 20 more days of vacation leave to cash during fiscal year 2015 than she was permitted, it could reasonably conclude the Board suffered no damages because she could have converted those days in fiscal year 2016 at a higher rate of pay. In addition, Lawless introduced into evidence her responses to the findings for recovery on travel reimbursement and ESC credit card expenditures and testified those responses were accurate. The jury was free to believe her statements that the superintendent orally approved the travel and approved the purchase of candles and fragrance products due to a persistent musty odor in her office.

**{¶62}** The jury also did not lose its way or create a manifest miscarriage of justice when it failed to award the Board damages for the performance incentives. Although the auditor's office "reported an abuse of public funds" with regard to them, the special audit report explained that "abuse" meant behavior that was deficient or improper when compared to the behavior a prudent person would consider reasonable and necessary under the circumstances. An employee from the auditor's office testified that an "abuse of funds" does not mean fraud occurred. The report pointed out flaws

with the parties' agreement that allowed Lawless to receive the maximum performance incentives "using her interpretation of the contract language." However, it did not find that Lawless miscalculated the incentives and make a finding for recovery regarding them. The report also did not find that Lawless had a duty to spend money on special education services but did not for the purpose of increasing her performance incentives. Rather, it recognized ESC's service agreements failed to address the disposition of unspent funds.

{¶63} The jury also had no obligation to conclude that the testimony of Hill established that Lawless improperly coded cost centers to the general fund to increase her performance incentives. Hill testified that Lawless improperly coded certain cost centers on ESC's financial summary report for fiscal year 2014, such as the K9 Program, the Southern Ohio Public School Insurance Consortium, and the LCA. However, Lawless did not calculate her performance incentives using financial summary reports but rather used financial statements prepared by a third-party. Hill claimed the third-party told her that its calculation of the general fund balance included "everything" in the general fund class on the financial summary except for the consortium. However, based on the fiscal year 2014 financial summary, the general fund balance excluding the consortium totaled $1,592,924.76, whereas the general fund balance on the fiscal year 2014 financial statement was $1,719,294. Thus, it is unclear how the coding on the 2014 financial summary report impacted Lawless' performance incentive that year.

{¶64} The jury also did not lose its way or create a manifest miscarriage of justice when it failed to award the Board damages for the entire cost of the special audit. Although Hill testified that the special audit cost ESC $29,100, the Board did not

introduce into evidence any supporting documentation or provide a cost breakdown. The jury was free to reject the contention that Lawless was responsible for the entire cost of the audit. The special audit report included findings for recovery against Dr. Payne and also recommended that the Board implement changes.

{¶65} Finally, the jury did not lose its way or create a manifest miscarriage of justice when it failed to award damages for salaries of interim treasurers who served while Lawless was on administrative leave. Neither the auditor nor Dr. Payne recommended that the Board place Lawless on administrative leave, and the treasurer's contract did not contemplate such leave. The jury could conclude that Lawless' conduct did not justify her placement on administrative leave for over a year before the Board took action to terminate her contract.

{¶66} For the foregoing reasons, we overrule the second assignment of error.

### VII. MOTION FOR NEW TRIAL

{¶67} In its fourth assignment of error, the Board contends that the trial court abused its discretion when it denied the Board a new trial based on newly discovered evidence. The Board claims it was entitled to a new trial based on the post-trial decision of the auditor to rescind Auditor of State Awards to ESC and the post-trial decision of Dr. Payne to voluntarily repay his performance incentives. Lawless asserts that this evidence was not "newly discovered" because it did not exist at the time of trial. In response, the Board argues that other courts have treated evidence that came into existence after trial as newly discovered evidence, and courts that do not have made exceptions when injustice would result.

**{¶68}** "A trial court's decision denying a new trial pursuant to Civ.R. 59(A)(8) will not be disturbed, absent an abuse of discretion." *Gregory v. Kottman-Gregory*, 12th Dist. Madison Nos. CA2004-11-039 & CA2004-11-041, 2005-Ohio-6558, ¶ 25. Again, an abuse of discretion occurs when a court "acts in an unreasonable, arbitrary, or unconscionable manner." *Charvat*, 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, at ¶ 16.

**{¶69}** Civ.R. 59(A)(8) states that a court may grant a new trial based on "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence [the party] could not have discovered and produced at trial[.]" "A trial court does not abuse its discretion in overruling a Civ.R. 59 motion for a new trial based upon newly discovered evidence where the events constituting the newly discovered evidence occurred after trial and subsequent to the court decision but prior to entry of judgment." *Ewing v. Ewing*, 4th Dist. Meigs No. 368, 1986 WL 6049, *3 (May 20, 1986). For purposes of Civ.R. 59(A)(8), the phrase "newly discovered evidence" "refers to evidence of facts *in existence at the time of trial* of which the aggrieved party was excusably ignorant." (Emphasis added.) *Id.* The principle that facts that come into existence after trial are not newly discovered evidence that would justify granting a new trial "is well grounded in the basic concept of finality of judgments." *In re S.S.*, 9th Dist. Wayne No. 04CA0032, 2004-Ohio-5371, ¶ 14. As the Ninth District Court of Appeals has stated:

> "To permit parties to bring up issues and facts that occurred after the trial would only serve to leave judgments unsettled and open to challenge at any time." *Hails v. Hails* (Sept. 30, 1993), 11th Dist. No. 92-L-182. There must be a reasonable end to litigation. Id. "To allow otherwise would mean the potential perpetual continuation of all trials in derogation of the notion of finality." Fink, Greenbaum, & Wilson, Guide to the Ohio Civil Rules of Procedure (2003) § 59:14.

*Id.*

{¶70} The trial court's decision to overrule the Board's request for a new trial was not unreasonable, arbitrary, or unconscionable. Dr. Payne's post-trial decision to repay his performance incentives and the auditor's post-trial decision to revoke Auditor of State awards is not newly discovered evidence. These are not facts that existed at the time of trial but rather are events that occurred after trial. In addition, the Board has not shown that the evidence is "such as will probably change the result if a new trial is granted." *Payne v. Cartee*, 111 Ohio App.3d 580, 593, 676 N.E.2d 946 (4th Dist.1996), citing *Sheen v. Kubiac*, 131 Ohio St. 52, 1 N.E.2d 943 (1936), paragraph three of the syllabus. Dr. Payne's voluntary repayment of his performance incentives does not demonstrate that the performance incentives Lawless received were improper. Also, the Board did not submit evidence about the specific information that led to revocation of the awards. To the extent this information is in the special audit report, which was admitted into evidence, we fail to see how a post-trial decision to rescind awards based on information a jury already considered might change the result if a new trial was granted. Thus, we overrule the fourth assignment of error.

## VIII. CONCLUSION

{¶71} For the foregoing reasons, we sustain the first assignment of error in part and overrule it in part, and we overrule the remaining assignments of error and the cross-assignment of error. Accordingly, we reverse the denial of summary judgment to the Board on the claim for breach of the severance pay clause, reverse the grant of partial summary judgment to Lawless on the claims for breach of the leave time clause and severance pay clause, and reverse the judgment on the verdicts regarding those

claims.  We remand for further proceedings on those claims that are consistent with this

opinion.  However, we affirm the trial court's judgment in all other respects.


JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
     Michael D. Hess, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**