OPINION
{¶ 1} Tammy Imbrogno, plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by MIMRx.COM, Inc. ("MIMRx") and MIM Corporation (sometimes referred to collectively as "MIM"), defendants-appellees.
 {¶ 2} MIMRx, a wholly-owned subsidiary of MIM Corporation, specialized in selling pharmaceutical products over the Internet. On January 1, 2000, appellant met with MIMRx's vice-president, Amy Andres, to discuss employment with MIMRx. During that discussion, appellant claims Andres told her that, if she accepted employment with MIMRx, she would be granted stock options "significant enough" to be financially secure in the "near future."
 {¶ 3} On January 4, 2000, Andres mailed appellant a letter extending an offer of employment ("offer letter"). The offer letter set forth various benefits of employment, including vacation, salary, healthcare, disability, and a 401(K) plan. Pertinent to the present case, the offer letter also indicated "Stock Options commensurate with your position will be offered. The number of options granted to you will be subject to approval by the Company's Compensation Committee or its designee." Appellant accepted the position by signing the offer letter on January 4, 2000.
 {¶ 4} On January 24, 2000, appellant began employment with MIMRx as its customer service manager, organizing the transfer of operations of MIMRx's predecessor from Cleveland to Columbus. In late spring 2000, Paul Petru replaced Andres as the executive in charge of the Columbus facility. On June 24, 2000, appellant was terminated from employment based upon alleged deficiencies in her performance. During the span of her employment, appellant never received any stock options, any documents pertaining to stock options, or any information about the vesting terms or strike price. The compensation committee never approved any stock options for appellant before she was terminated.
 {¶ 5} On June 5, 2001, appellant filed a complaint against MIMRx, alleging breach of contract, breach of implied contract, and fraud. On February 12, 2002, MIMRx filed a motion for summary judgment. Thereafter, the claims for breach of implied contract and fraud were dismissed. On October 21, 2002, appellant filed an amended complaint adding MIM Corporation as a defendant and asserting additional claims for promissory estoppel and intentional infliction of emotional distress. On January 24, 2003, MIM Corporation and MIMRx filed a supplemental motion for summary judgment. Thereafter, the intentional infliction of emotional distress claim was dismissed. Therefore, only her breach of contract and promissory estoppel claims remained at issue. On March 6, 2003, the trial court granted the motions for summary judgment. The trial court filed an amended decision and entry again granting the motions for summary judgment on March 20, 2003. Appellant appeals the judgment of the trial court, asserting the following three assignments of error:
Assignment of Error No. 1: The Trial Court erred as a matter of law on Appellant's breach of contract claim when it concluded that the parties' contract was illusory.
Assignment of Error No. 2: The Trial Court erred as a matter of law on Appellant's promissory estoppel claim when it concluded that there were no promises made by the Appellees which should have reasonably been expected to induce reliance by the Appellant.
Assignment of Error No. 3: The Trial Court erred as a matter of law by failing to recognize that there existed material facts in dispute and likewise failed to properly apply and consider known facts contained in the record resulting in a decision that was unsupported by the preponderance of substantial, reliable and probative evidence.
 {¶ 6} Appellant argues in her assignments of error that the trial court erred in granting summary judgment to MIM. Summary judgment will be granted where the movant demonstrates that there is no genuine issue of material fact, that the moving party is entitled to judgment as a matter of law, and where reasonable minds can only reach one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Once the moving party has satisfied its initial burden, the non-moving party has a reciprocal burden of setting forth specific facts showing there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 7} In her first assignment of error, appellant argues the trial court erred in granting summary judgment to MIM on her breach of contract claim when it concluded that the parties' contract with regard to the stock options was illusory. Initially, we note that a stock option is defined as the right to buy a designated stock at any time within a specified period at a determinable price, if the holder of the option chooses. Banning v. Banning (June 28, 1996), Greene App. No. 95 CA 79, citing Eric C. Hollowell, Annotation, Valuation of Stock Options for Purposes of Divorce Court's Property Distribution, 46 A.L.R. 4th 689, 691-692 (1986).
 {¶ 8} A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory. Century 21 v. McIntyre (1980),68 Ohio App.2d 126, syllabus, citing 1 Williston on Contracts (3 Ed. 1957) 140, Section 43. If a promise is illusory, of course, then the contract is not enforceable. Id; 17 American Jurisprudence 2d (1964) 419, Contracts, Section 79. " `An apparent promise which according to its terms makes performance optional with the promisor * * * is in fact no promise, although is often called an illusory promise.' " Andreoli v. Brown (1972), 35 Ohio App.2d 53, 55, quoting Restatement, Contracts, Section 2 (1925) paragraph (b) of the Comment.
 {¶ 9} We find no Ohio case law directly on point. However, after reviewing the record in the present case, we agree with the trial court that the contract, with regard to the stock options, was illusory. Andres indicated to appellant that she would be granted stock options "significant enough" to be financially secure in the "near future." The offer letter provided that "Stock Options commensurate with your position will be offered. The number of options granted to you will be subject to approval by the Company's Compensation Committee or its designee." According to these terms, MIM retained an unlimited right to determine the nature and extent of performance. MIM, specifically MIM's "compensation committee," retained the unlimited right to determine the extent to which appellant would be offered stock options. Although appellant argues that, the only issue the compensation committee could decide was the number of options, the compensation committee could have voted that the number of options granted to appellant should be zero. The compensation committee could have also priced the options so high that they would have been rendered valueless, theoretically, forever.
 {¶ 10} Further, although appellant argues that the phrase "will be offered" constitutes a definite promise, the sentence read in its entirety indicates that stock options commensurate with appellant's experience would be offered. Thus, at its sole discretion, the compensation committee could have later voted that the number of stock options for employees with appellant's experience would be zero. Also, the phrase "will be offered" implies a future action, and there was no definite period as to when MIM had to offer stock options. The contract clearly does not indicate that the options would be awarded immediately upon hire. MIM could have waited an indefinite period to hold its compensation committee meeting to discuss a stock-option policy. In addition, MIM Corporation pharmacy manager James Taylor, who was present at the meeting between appellant and Andres, stated that the conversation about stock options was "nothing specific." He explained that, at the time, Internet start-ups were making huge sums of money after going public, and Andres said that they would only have to work hard for a couple of years and then retire. He did not recall that Andres specifically said they would receive stock options. Thus, appellant cannot rely upon Andres' representations or the written contract to demonstrate a definite promise.
 {¶ 11} In sum, although at first glance the contract or conversation may seem to make several promises, a closer analysis indicates that they, in effect, made no promises, and, ultimately, the decision whether to grant options and establish the options price was unlimited and without restrictions. Pursuant to the vague terms of the written contract, the compensation committee was free to use unfettered discretion to effectively deny appellant stock options.
 {¶ 12} In addition, in order to be successful on a breach of contract claim, the plaintiff must provide evidence of the following: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. Doner v. Snapp (1994),98 Ohio App.3d 597, 600. For a contract to be enforceable, the conduct of the parties must evidence a meeting of the minds, and the essential terms of the contract must be definite and certain. Nilavar v. Osborn (1998),127 Ohio App.3d 1, 11. A valid contract must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, the consideration to be exchanged, the quantity if applicable, and the price to be paid. Alligood v. Proctor Gamble Co. (1991), 72 Ohio App.3d 309, 311. The terms of the contract are certain if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Mr. Mark Corp. v. Rush, Inc. (1983), 11 Ohio App.3d 167, 169.
 {¶ 13} After reviewing the record in the case at bar, this court concludes that there was no evidence introduced demonstrating that there was ever a meeting of the minds between the parties concerning the stock options. Appellant's offer letter failed to indicate the essential terms of the agreement. Neither the letter nor the discussion between appellant and Andres ever supplied the number of options, the exercise period, the vesting schedule, or the strike price. Notably, neither the pre-employment discussions nor the offer letter indicated when the company would issue the options. There was no evidence that MIMRx planned to issue options to employees immediately upon their hire or at the commencement of operations in April 2000. A review of the evidence demonstrates that appellant herself could not provide any definite terms of the options agreement. Thus, reasonable minds could only conclude that there was no meeting of the minds between the parties as to the essential terms of the contract. See Gill v. Monetary Mgmt. Corp. (Sept. 19, 1996), Cuyahoga App. No. 69949 (no meeting of the minds as to the essential terms of a contract when the structure of a bonus program was unknown and not defined, there was no way to determine the size or shape of the program, and the contract did not specify what it would take to earn the bonus).
 {¶ 14} Further, it is true that, "if the court can determine that the parties intended to be bound, it may fashion those less essential terms that were omitted in order to reach a fair and just result." Gurich v. Janson (Nov. 17, 2000), Ashtabula App. No. 99-A-0006. However, as the Ohio Supreme Court observed in Litsinger Sign Co. v. Am. Sign Co. (1967), 11 Ohio St.2d 1, 14:
It is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, "making a contract for the parties," no enforceable obligation results. * * *
 {¶ 15} In the present case, there is nothing in the record that would allow a court to fashion those terms that were omitted in order to reach a fair and just result. As indicated above, the letter and the discussion between appellant and Andres did not indicate the number of options, the exercise period, the vesting schedule, the strike price, or when the options would be issued. Appellant urges that the terms in her contract should be interpreted to be in accord with the MIM Corporation stock options eventually granted to pharmacy manager James Taylor in December 2000. However, that she would have been or should be entitled to the same options as Taylor is speculation by appellant. There is no evidence that appellant and Taylor were similarly situated so that it could be reasonably inferred that she would have been granted the same options under the same terms as Taylor. Further, Taylor received his stock options in December 2000, six months after appellant was terminated. As appellant no longer worked for MIM at that time, appellant cannot say she was entitled to the same options that Taylor received in December 2000.
 {¶ 16} Also, Barry Posner, the executive vice-president of MIM Corporation, testified in his deposition that, when appellant's offer letter was written, the plan was to grant MIMRx options as an Internet spin-off of the parent company, not to grant options of MIM Corporation stock. He stated the December 2000 grant to Taylor was unrelated to the original plan to grant MIMRx stock options and was not based upon Taylor's employment at MIMRx. Taylor also stated that he believed the original plan was for the new employees of MIMRx to get shares of MIMRx, not MIM. Appellant has not pointed to any evidence showing for which company she was to receive options and does not distinguish between the two. Posner also stated that the December 2000 options were granted to certain people considered valuable to the future success of the company. As appellant was not employed by MIM at that time, she cannot be said to have been valuable to the future success of MIM. Posner also testified that no employee ever received MIM Corporation options in lieu of MIMRx options. Thus, the circumstances surrounding Taylor's grant of options make his terms inapplicable to any terms of appellant's agreement and provide no reasonable guidance in supplying the absent terms.
 {¶ 17} Further, appellant suggests that guidance as to the terms of the contract can be supplied by Andres' statement that the number of options granted would be "significant enough" for appellant to be financially secure in the "near future." Andres' excessively enthusiastic prophecy as to their future prospects cannot form a basis for supplying the essential terms of the contract. Without these essential terms of the contract, or any evidence presented to legally infer these essential terms, there could be no basis for any court or jury to determine the existence of a breach, fashion an appropriate remedy, or grant accurate damages. For these reasons, appellant's first assignment of error is overruled.
 {¶ 18} Appellant argues in her second assignment of error that the trial court erred as to her promissory estoppel claim when it concluded that there were no promises made by MIM that should have reasonably been expected to induce appellant's reliance. To make a prima facie case for promissory estoppel, appellant must show: (1) a clear and unambiguous promise; (2) reliance upon the promise; (3) reliance that is both reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260.
 {¶ 19} In the present case, in her appellate brief appellant argues only the second, third, and fourth elements of a promissory estoppel claim. She asserts she relied upon the promise of stock options, her reliance was reasonable, and that she was injured by leaving her prior job and taking the job with MIMRx without ever receiving stock options. However, appellant's promissory estoppel claim fails on the first element. MIM has demonstrated that there is no genuine issue of material fact as to whether the promise was clear and unambiguous. For a claim to warrant the application of promissory estoppel, this equitable doctrine requires, inter alia, that the promise must be clear in its terms. Stull v. Combustion Engineering, Inc. (1991), 72 Ohio App.3d 553, 557. As explained above, the promise to issue stock options to appellant was so vague as to be unenforceable. All material terms are missing. Neither the offer letter nor the discussion between appellant and Andres ever indicated the number of options, when they would be issued, the exercise period, the vesting schedule, or the strike price. Because there is no genuine issue of material fact as to the first element of appellant's promissory estoppel claim, her claim fails, and we need not address the other elements. Accordingly, appellant's second assignment of error is overruled.
 {¶ 20} Appellant argues in her third assignment of error that the trial court erred by failing to recognize there existed material facts in dispute and failing to properly apply and consider known facts contained in the record. Appellant asserts that, in rejecting her promissory estoppel claim, the trial court "overstepped its authority," made factual determinations, and failed to properly consider material facts in dispute. Specifically, appellant claims the trial court erred in concluding that there were no promises made by MIM that should reasonably have been expected to induce her reliance; the promise of stock options was in the nature of a preliminary negotiation, akin to "puffery" in a consumer transaction; and MIM had not extended an offer of employment to appellant at the time the verbal promise of stock options was made. However, appellant's arguments under this assignment of error relate only to the second and third elements of promissory estoppel enunciated above. In dispensing with appellant's promissory estoppel claim in her second assignment of error, we found appellant failed to demonstrate a genuine issue of material fact with regard to the first element. Thus, because in rejecting her promissory estoppel claim we did not rely upon the reasoning appellant now challenges, we need not address her arguments under this assignment of error. Therefore, appellant's third assignment of error is overruled.
 {¶ 21} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, J., concurs.
BRYANT, J., concurs separately.