[Cite as *Wooden v. Marysville Animal Care Ctr.*, 2026-Ohio-1570.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cassie Wooden, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 25AP-379 |
| v. | : | (C.P.C. No. 22CV-3348) |
| Marysville Animal Care Center LLC, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 30, 2026

**On brief:** *Behal Law Group LLC*, and *John M. Gonzales*, for appellee. **Argued:** *John M. Gonzales*.

**On brief:** *Olsheski Law Co., LPA*, and *Jessica L. Olsheski*, for appellant. **Argued:** *Jessica L. Olsheski*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} Defendant-appellant, Marysville Animal Care Center, LLC, appeals the judgment of the Franklin County Court of Common Pleas which found in favor of plaintiff-appellee, Cassie Wooden, D.V.M., on a breach of contract claim. For the following reasons, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} This case stems from an offer of employment and an employment agreement made to Dr. Cassie Wooden to serve as Medical Director and Veterinary Associate at the Marysville Animal Care Center ("Care Center") a veterinary clinic in Marysville, Ohio, owned by Bindig, LLC. Bindig, LLC has four partners, including Dr. Brian Carson.

{¶ 3}    On July 30, 2018, Dr. Wooden and Bindig, LLC entered into an Employment Agreement with an effective date of September 1, 2018.  The Employment Agreement contained a provision regarding potential partnership for Dr. Wooden which stated:

> At Employer's sole discretion, Employee shall receive either a Forty-Five Thousand Dollar ($45,000.00) bonus (the "Bonus" herein) OR an offer to purchase a 20% membership interest in the Practice at the purchase price of Two Hundred Sixty-Seven Thousand Two Hundred Dollars ($267,200) (the "Membership Offer" herein) subject to adjustments as noted herein if Employee is still employed by Employer three years after the Effective Date of this Employment Agreement.
>
> . . .
>
> The Bonus, if earned by Employee and opted for by Employer, shall be paid within 30 days following three years after the Effective Date.

(Emp. Agreement at 3.)

{¶ 4}    The Employment Agreement also contained a "Job Description" section that stated Dr. Wooden "shall be scheduled for clinical duties 4 weekdays per week.  In addition to Employee's weekday clinical duties, Employee shall also be scheduled to work as often as every other Saturday." (Emp. Agreement at 1.) The Employment Agreement established Dr. Wooden's base annual salary at $125,000 and required the Care Center to give Dr. Wooden 90-days notice if her base salary was to be decreased by more than 5 percent.

{¶ 5}    In July 2021, Dr. Wooden was nearing the end of her pregnancy, and she made a request to Dr. Carson to reduce her clinic days to three days per week and every other Saturday.  In a deposition, Dr. Wooden stated that she informed Dr. Carson she did not want this request to affect her medical-directing duties, her ability to maintain health insurance for her family, or a potential partnership offer.  Dr. Wooden stated that Dr. Carson agreed to the change in clinic days and that he did not think it would affect her potential partnership.  Dr. Wooden further stated it was her understanding that the switch to three clinic days was not for a finite period of time, but "for good."  In his deposition, Dr. Carson stated he did agree to the three clinic days a week change but, in briefing, he claims that change was on a temporary basis, as an accommodation for Dr. Wooden toward the end of her pregnancy.

{¶ 6} From August 1 to November 1, 2021, Dr. Wooden was on parental leave. On September 1, 2021, while she was on parental leave, she reached three-years of employment at the Care Center. However, the Care Center did not offer Dr. Wooden partnership on that date, nor did it pay Dr. Wooden the $45,000 bonus within 30 days thereafter. Dr. Carson stated in his deposition that he and Dr. Wooden had discussed extending the partnership-offer discussion until she returned from parental leave, but that discussion was not memorialized in writing.

{¶ 7} In his deposition Dr. Carson also explained that he and the other partners eventually met on December 3, 2021 to discuss Dr. Wooden and her possible partnership. On December 7, 2021, Dr. Carson offered Dr. Wooden partnership, but also informed her that in order to become a partner she would need to return to working four clinic days a week as well as every other Saturday. Dr. Wooden did not immediately respond to the offer.

{¶ 8} In January of 2022, the Care Center switched Dr. Wooden from the salary-based compensation structure set out in the Employment Agreement to a commission-based structure that included a five-percent bonus. Dr. Wooden claims this change resulted in a 40 percent reduction in her pay and was done unilaterally and without 90-days notice.

{¶ 9} On January 17, 2022, Dr. Wooden resigned by letter from the Care Center, and informed the Care Center that her last day of employment would be April 16, 2022. On March 28, 2022, however, Dr. Wooden did not show up for work, and she did not subsequently return to work any day thereafter.

{¶ 10} On May 17, 2022, Dr. Wooden filed a complaint in the Franklin County Court of Common Pleas. In her complaint, Dr. Wooden alleged that the Care Center breached the Employment Agreement by "fail[ing] to offer the membership interest in the practice or pay the bonus by the three-year deadline set forth in the Employment Agreement." (May 17, 2022 Compl. at 2.) Dr. Wooden also argued that the Care Center was required to give her 90 days notice to decrease her base salary unless she waived such notice in writing. Dr. Wooden alleged that she did not waive the notice provision, that the Care Center breached the Employment Agreement by unilaterally decreasing her base salary beginning January 12, 2022. Dr. Wooden further alleged that the reduction in pay and unauthorized deductions in her pay related to health insurance costs while she was on leave led to her

constructive discharge. She also alleged violations of Ohio's Prompt Pay Act and the Pregnancy Discrimination Act.

{¶ 11} On August 28, 2024, a magistrate issued a decision finding that Dr. Wooden had failed to provide any credible evidence to support the claim of discrimination based on her pregnancy, and rather that "Defendant had provided the Plaintiff with all the benefits she was entitled to. The Defendant and the Plaintiff had agreed to a reduction of the work days required to aid the Plaintiff during and after her pregnancy. Though the Plaintiff suspected that her pregnancy had something to do with her eventual issues with the Defendant, there just was no direct evidence to support the claim." (Mag.'s Decision at 3.)

{¶ 12} The magistrate further determined that, under the terms of the Employment Agreement, the Care Center was required to provide either the bonus or a partnership offer within 30 days of the end of the three-year contract period, i.e., October 1, 2021. The magistrate found that Dr. Wooden was entitled to the $45,000 bonus, as neither an offer of partnership nor the bonus was timely provided. The magistrate also stated that, even if he had not held that the Care Center breached the agreement by not timely paying the bonus or making a partnership offer, he "would still hold that the Defendant breached the Agreement when it placed an additional clause into the partnership offer finally made by the Defendant in December of 2021." *Id.* at 10. The magistrate determined that it was "a breach of the terms of the Agreement for the Defendant to condition the offer of partnership on terms that were not clearly contained in the Agreement." *Id.* at 12.

{¶ 13} The magistrate also found that the Care Center violated the agreement by changing Dr. Wooden's salary. The magistrate found the Care Center's statement that the change of Dr. Wooden's compensation to a commission-based structure was going to be within the five-percent range authorized by the Employment Agreement lacked credibility. The magistrate awarded $45,000 to Dr. Wooden for breach of the Employment Agreement and a further $7,365 for the Care Center's improper reduction of Dr. Wooden's compensation without the required 90-day notice.

{¶ 14} On September 11, 2024, the Care Center filed numerous objections to the magistrate's factual findings as well as to how the magistrate weighed the evidence. The Care Center also filed six objections to the magistrate's legal conclusions and another objection that the magistrate was improperly motivated by sympathy and bias.

{¶ 15} On March 5, 2025, the trial court overruled all of the Care Center's objections and adopted the magistrate's decision.  The Care Center now appeals.

## II.  ASSIGNMENTS OF ERROR

{¶ 16} The Care Center asserts the following nine assignments of error.[1]

> 1. The trial court erred in overruling Defendant's objections to the findings of fact.
>
> 2. The trial court improperly applied an inapplicable contract provision to find that Plaintiff was entitled to the $45,000 bonus.
>
> 3. The court's decision does not account for the undisputed and unequivocal testimony that Defendant cured its breach of December 7, 2021.
>
> 4. The court's decision inexplicably finds that the contract was ambiguous.  The contract was not ambiguous.
>
> 5. The magistrate improperly excluded evidence that could have resolved the alleged ambiguity and improperly allowed Plaintiff to create ambiguity with testimony about oral modifications to the contract. The trial court improperly overruled objections on that point.
>
> 6. The court was improperly motivated by sympathy and bias.
>
> 7. The court improperly applied the concept of pretext.
>
> 8. The court improperly cut off and rejected Dr. Ratliff's testimony on the calculation of damages.
>
> 9. The court failed to address Defendant's counterclaim for damages.

## III.  ANALYSIS

{¶ 17} A trial court reviews a magistrate's decision de novo, as required by Civ.R. 53. *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3870, ¶ 24 (10th Dist.), citing *Mayle v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-2774, ¶ 15 (10th Dist.).  Further, in ruling on objections to a magistrate's decision, the trial court must undertake an independent review

---

[1] We note that in its brief, appellant lists different assignments of error in its table of contents, in its statement of assignments of error, and in the argument section of its brief. For clarity, the court considers the assignments of error contained in the appellant's argument section of its brief.

of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." *Id.*, citing Civ.R. 53(D)(4)(d).

{¶ 18} We note that "an *appellate* court, however, reviews a trial court's adoption of a magistrate's decision for an abuse of discretion." (Emphasis added.) *Id.* at ¶ 25, citing *Mayle* at ¶ 15. Claims of trial court error must be based on the actions taken by the trial court itself, rather than on the magistrate's findings. *Mayle* at ¶ 15. A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " 'commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis deleted.) *Id.*, quoting *Black's Law Dictionary* (2d Ed. 1910). In other words, an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Therefore, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily, or unconscionably. *Skorvanek* at ¶ 25.

### A. Assignment of Error No. 1

{¶ 19} In its first assignment of error, the Care Center argues that the trial court erred in overruling the Care Center's objections to the magistrate's findings of fact. The Care Center specifically takes issue with the magistrate's findings regarding the hours that Dr. Wooden averaged per week, the parties agreeing to modify Dr. Wooden's work schedule, Dr. Wooden's testimony on the options Dr. Carson outlined to her in December 2021, as well as her change to a commission-based compensation structure, Dr. Carson's testimony where he agreed to modify Dr. Wooden's work schedule in July 2021, and the testimony of another Bindig, LLC partner about a meeting where the partners discussed Dr. Wooden. However, on appeal, we must uphold a trial court's factual determinations as long as they are " 'supported by some competent, credible evidence.' " *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), paragraph one of the syllabus. In applying this standard of review, we "must presume the findings of the trier of fact are correct because it is best able to

observe the witnesses and use those observations in weighing the credibility of the testimony." *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803, ¶ 64 (10th Dist.), quoting *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 31 (10th Dist.), citing *Seasons Coal Co.* at 80. *See also Sparre v. Ohio Dept. of Transp.*, 2013-Ohio-4153, ¶ 12 (10th Dist.).

{¶ 20} Under its first assignment of error, the Care Center repeats many of the objections it originally lodged against the magistrate's decision, and which were ultimately rejected by the trial court. We find no abuse of discretion by the trial court, as these findings of fact are supported by some competent, credible evidence within the record, particularly the Employment Agreement and the testimonies of Dr. Wooden, Dr. Carson, and other partners at the Care Center. As stated above, we must uphold the trial court's factual determinations that are supported by competent, credible evidence. Nor will we substitute a trial court's findings of fact with our own, as the trier of fact, here the magistrate, is best suited to determine the credibility of the testimony. We therefore overrule the Care Center's first assignment of error.

### B. Assignment of Error No. 2

{¶ 21} The Care Center next argues that the trial court improperly applied paragraph 7(A)(ii) of the Employment Agreement, to find that Dr. Wooden was entitled to the $45,000 bonus. We do not agree.

{¶ 22} Paragraph 7(A)(ii) of the Employment Agreement states:

> Should Employer terminate the employment of Employee without cause, then the Bonus will be prorated on a time basis and paid by Employer to Employee within 30 days of Employee's final day of Employment.

{¶ 23} The Care Center argues that, as Dr. Wooden was not terminated without cause, this language is inapplicable to the facts at hand. However, regardless of termination, the structure of this provision indicates that the bonus was accrued over time. We do not agree that the magistrate erred in considering this provision in his determination that Dr. Wooden was entitled to the $45,000 bonus. In his decision, the magistrate determined there was no credible evidence to show that the Care Center timely met its obligation to offer partnership or give Dr. Wooden the $45,000 bonus, and there was no credible evidence that Dr. Wooden waived this requirement. (Mag.'s Decision at 9.) The

magistrate looked to paragraph 7(A)(ii) to determine that the parties intended the bonus to accrue over the time that Dr. Wooden remained employed at the Care Center and that the Employment Agreement "treated the bonus as an *earned* benefit." (Emphasis added.) *Id.* This further supports that Dr. Wooden was entitled to the $45,000 bonus when she did not receive a timely offer of partnership on September 1, 2021.

{¶ 24} Accordingly, we do not find that the trial court abused its discretion in adopting this finding of the magistrate, and we overrule the Care Center's second assignment of error.

### C.  Assignments of Error Nos. 3 and 4

{¶ 25} As they are interrelated, we now consider the Care Center's third and fourth assignments of error together.  In its third assignment of error, the Care Center argues that the trial court erred in not "account[ing] for the undisputed and unequivocal testimony that Defendant cured its breach on December 7, 2021." (Appellant's Brief at 29.)  The Care Center argues in its fourth assignment of error that the trial court erred in adopting the magistrate's finding that the Employment Agreement was ambiguous and that the Employment Agreement dictated that the partnership offer was contingent on Dr. Wooden working four days per week and every other Saturday.

{¶ 26} Neither party disputes that the Care Center did not extend a partnership offer by September 1, 2021 or the $45,000 bonus by October 1, 2021 to Dr. Wooden. Nevertheless, the Care Center argues that it cured this breach by offering Dr. Wooden partnership on December 7, 2021.  The magistrate, however, disagreed finding that the Care Center was *still* in breach of the contract because it placed an *additional* clause, working four days per week, into the partnership offer.  (Mag.'s Decision at 10.)  The magistrate stated, "it is acknowledged that the language and subparagraphs of Paragraph 7 do not have any language noting how many days the Plaintiff was required to work if she accepted the offer to become a partner." *Id.* at 11.

{¶ 27} Looking at the language of the Employment Agreement, paragraph 7, which pertains to the partnership offer, we agree with the magistrate and the trial court's interpretation. Paragraph 7(B)(iv) states that upon accepting the partnership offer "Employee shall continue to perform his or her job description."  Paragraph 7(B)(viii) of the Employment Agreement also states that "Employee shall make a commitment to *continue*

as a full time working member of the Practice." (Emphasis added.) (Emp. Agreement at 9.) As she approached her three-year anniversary of employment, Dr. Wooden was working in the clinic three weekdays per week, but there is no evidence that she was working less than "full time." Nowhere in paragraph 7, regarding the partnership offer, does the Employment Agreement dictate the number of clinical days that Dr. Wooden would need to work as a partner, only that she would make a commitment to work "full time." While the Employment Agreement does not define "full time," the magistrate noted that Dr. Wooden was able to maintain her "full time" employment status while working three clinic days per week.

{¶ 28} Furthermore, critical to the analysis of these issues, the magistrate found that the parties orally modified the portion of the Employment Agreement detailing Dr. Wooden's work schedule in July 2021, despite the Employment Agreement containing a provision dictating that modifications to the Employment Agreement shall be made in writing. In *RotoSolutions, Inc. v. Crane Plastics Siding, LLC*, 2013-Ohio-4343 (10th Dist.), this court reiterated that:

> "[A]n oral modification of a written contract can be enforceable notwithstanding a provision in the contract requiring modifications to be in writing where, as alleged here, the parties have engaged in a course of conduct in conformance with the oral modification and where the party seeking to enforce the oral modification would suffer injury if the modification were deemed invalid." *Exact Software North America, Inc. v. Infocon Sys., Inc.*, N.D.Ohio No. 3:03CV7183, 2004 U.S. Dist. LEXIS 7580, 2004 WL 952876 at *5 (Apr. 16, 2004).
>
> "[C]ourse of conduct can be considered in certain respects notwithstanding a 'written changes only' contractual provision, because the series of acts in question are evaluated only as evidence regarding a continuity of the purpose captured by the original contractual terms at the time of formation." *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 687 (6th Cir.2000); *Smaldino v. Larsick*, 90 Ohio App.3d 691, 698, 630 N.E.2d 408 (11th Dist.1993) ("A gratuitous oral agreement to modify a prior contract is binding if it is acted upon by the parties and if a refusal to enforce the modification would result in a fraud or injury to the promisee.") (citing Restatement of Law 2d, Contracts, Section 241 (1981)); *200 West Apartments v. Foreman*, 8th Dist. No. 66107, 1994 Ohio App. LEXIS 4081 (Sept. 15, 1994) (noting that even contracts that are required by

the statute of frauds to be in writing can be modified orally when "the parties to the written agreement act upon the terms of the oral agreement") (citing *Nonamaker v. Amos*, 73 Ohio St. 163, 76 N.E. 949, 3 Ohio L. Rep. 494 (1905); 51 Ohio Jurisprudence 3d, Statute of Frauds, Section 108. *See also*, *Wells Fargo Bank, NA v. Smith*, 11th Dist. No. 2010-T-0051, 2012-Ohio-1672 (waiver of no-oral modification clause where opposing party's subsequent admission or conduct evidenced its treatment of modification as operative).

*RotoSolutions, Inc.* at ¶ 19-20.

{¶ 29} Paragraph 21 of the Employment Agreement, entitled "Complete Agreement," states:

This Agreement represents the entire agreement and understanding between the parties as to the matters contained herein and it supersedes any and all agreements and representations made or dated prior thereto.

(Emp. Agreement at 7.)

{¶ 30} However, the evidence in the record clearly indicates that the parties made an oral modification to the Employment Agreement that was reflected in their course of conduct. Dr. Wooden and Dr. Carson both testified that Dr. Wooden's schedule was reduced in July 2021 to working three weekdays per week. While the Care Center argues that this was only an accommodation for Dr. Wooden's pregnancy and not a permanent change to Dr. Wooden's schedule, the record indicates that even after her parental leave concluded Dr. Wooden continued to work three clinic days per week.

{¶ 31} The Care Center alternatively directs us to the Employment Agreement's Job Description section, which states that "Employee shall be scheduled for clinical duties 4 weekdays per week. In addition to Employee's weekday clinical duties, Employee shall also be scheduled to work as often as every other Saturday." (Emp. Agreement at 1.) As we have noted, however, the parties' course of conduct indicates that this provision of the Employment Agreement was modified.

{¶ 32} It is under these circumstances that the magistrate found that the Care Center inserted an additional requirement in its December 7, 2021 partnership offer to Dr. Wooden, making the offer contingent on her working four clinic days per week. As the trial court stated, the "magistrate properly determined that there had been an oral modification

to the employment agreement based on the parties' course of conduct." (Mar. 31, 2025 Decision at 4.) Therefore, as the magistrate found, "it was a breach of the terms of the Agreement for the Defendant to condition the offer of partnership on terms that were not clearly contained in the Agreement," and therefore the Care Center did not cure its breach. (Mag.'s Decision at 13.)

{¶ 33} For these reasons, we overrule the Care Center's third and fourth assignments of error.

### D.  Assignment of Error No. 5

{¶ 34} The Care Center also argues that the magistrate erred by improperly excluding evidence it offered to address the ambiguity of the partnership offer and the work expectations of Dr. Wooden.

{¶ 35} At trial, the Care Center offered an exhibit that the Care Center's counsel stated

> was a document that the practice gave to Dr. Wooden in the initial - - very initial stages of making her an employment offer. It preceded the employment offer.
>
> It's not being produced to conflict or contradict anything in the employment agreement, but merely to set the record straight. [Dr. Wooden's counsel] said repeatedly there's just no other document that talks about the - - there's just no way Dr. Wooden could have ever known what the -- what a partnership would look like, and this simply spells it out.
>
> The Magistrate: well, then I'm going to have to on parol evidence indicate that since these terms are not integrated into the final document, which is Exhibit 1, I have to exclude it because you're -- you're offering it to try explain the understanding of the parties, which has been written in Exhibit 1 [the Employment Agreement].

(Aug. 27, 2024 Tr. Vol. II at 261-262.)

{¶ 36} "The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Ed Schory & Sons v. Soc. Natl. Bank*, 1996-Ohio-194, ¶ 28. The parol evidence rule states that " 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be

varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27 (2000), quoting 11 Williston on *Contracts* (4th Ed. 1999) 569-570, Section 33:4. The purpose of the parol evidence rule is to protect the integrity of written contracts. *Id.*, citing *Ed Schory & Sons* at 440. The rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments. " 'It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writings. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document.' " (Footnotes omitted.) *Id.*, quoting 11 Williston on *Contracts* at 541-548, Section 33:1.

{¶ 37} The Care Center notes, without citation to legal authority in its brief, that in the case of ambiguity in the terms of a contract, a trial court may allow other evidence that may resolve the ambiguity. However, as we have discussed already in regards to the Care Center's third and fourth assignments of error, any ambiguity was resolved by the parties' modification of the Employment Agreement. We therefore overrule the Care Center's fifth assignment of error.

### E.  Assignment of Error No. 6

{¶ 38} In its sixth assignment of error, the Care Center argues that the trial court was improperly motivated by sympathy and bias.

{¶ 39} "Judicial bias is a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." (Internal quotations marks deleted.) *Karr v. Salido*, 2024-Ohio-1141, ¶ 47 (10th Dist.), quoting *State v. Dean*, 2010-Ohio-5070, ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

{¶ 40} " 'A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption.' " *Id.* at ¶ 48, quoting *Wardeh v. Altabchi*, 2004-Ohio-4423, ¶ 20 (10th Dist.). " 'The appearance of bias or prejudice must be compelling to overcome this presumption of integrity.' " *Fisher v.*

*Univ. of Cincinnati Med. Ctr.,* 2015-Ohio-3592, ¶ 53 (10th Dist.), quoting *Trott v. Trott*, 2002-Ohio-1077, ¶ 18 (10th Dist.), citing *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1263 (1994).

{¶ 41} In its brief, the Care Center directs this court to testimony from Dr. Wooden and her husband, as well as off-the-record statements made by the court expressing dislike for the way the Employment Agreement was drafted as evidence of bias. However, we do not agree that this rebuts the presumption of no bias or prejudice on the part of the trial court. In the absence of further evidence supporting the Care Center's allegations of bias and sympathy, we must indulge the presumption of regularity of the proceedings. Moreover, even if the trial court did make the purported statements alleged by the Care Center, "judicial remarks during the course of [legal proceedings] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (Internal quotation marks deleted.) *Karr* at ¶ 50, quoting *State v. Dennison*, 2013-Ohio-5535, ¶ 46 (10th Dist.), quoting *Pratt* at paragraph four of the syllabus.

{¶ 42} Therefore, we overrule the Care Center's sixth assignment of error.

**F.  Assignment of Error No. 7**

{¶ 43} The Care Center also argues that the trial court improperly applied the concept of pretext in its decision. At trial, Dr. Wooden's counsel argued that the Care Center, in order to avoid paying the $45,000 bonus, made their partnership offer contingent on increasing Dr. Wooden's in-clinic work days, a condition they knew she likely would not accept. Dr. Wooden made this argument based on an email from Dr. Sarah Hayslip, one of the partners at Bindig, LLC, to the other partners wherein Dr. Hayslip stated:

> It seemed to me that there were rumblings of no partnership offer fairly early on in the 3 year period –certainly before [Dr. Wooden] became pregnant. It feels slimy to now say the offer isn't forthcoming because of her schedule reduction. If she called your bluff and said she would go back to working her former schedule, you still would not wish to offer partnership. So while you tell her it's all about her not wanting to do the agreed upon schedule, it's really not.

(Pl.'s Ex. I.)

{¶ 44} The Care Center argues that the concept of pretext is applicable to employment discrimination cases and wholly inapplicable to a breach of contract case. The Care Center states, "To the extent that the court's decision was motivated by a finding of pretext, it must be set aside." (Appellant's Brief at 45.) However, it is wholly unclear whether the trial court was swayed by an improper or inapplicable factor. "A general principal of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record." *Tonti v. East Bank Condos., LLC,* 2007-Ohio-6779, ¶ 26 citing *Werts v. Werts*, 2007-Ohio-4279, ¶ 16 (9th Dist.). We do not find the presumption of regularity has been overcome here.

{¶ 45} As Dr. Wooden notes, the pretext arguments were made during counsel's closing arguments, wherein counsel is afforded broad latitude. *Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraph two of the syllabus. Our examination of the record, the magistrate's decision, and the trial court's adoption of that decision does not indicate that the concept of pretext was a motivating factor in the trial court's determination. We accordingly overrule the Care Center's seventh assignment of error.

## G. Assignment of Error No. 8

{¶ 46} In its eighth assignment of error, the Care Center argues that the trial court improperly rejected testimony from one of the Bindig, LLC partners, Dr. Eric Ratliff. In his testimony, Dr. Ratliff discussed the reduction of Dr. Wooden's compensation in conjunction with the changes to her responsibilities in January 2021. The magistrate stated in his decision that "[Dr.] Ratliff tried to claim that – as he calculated the numbers – the new compensation scheme was in effect going to end up being within the 5% range. The undersigned found that statement to lack credibility." (Mag.'s Decision at 12-13.) The Care Center argues that the trial court improperly discounted Dr. Ratliff's testimony, with the magistrate even indicating during Dr. Ratliff's testimony that the magistrate did not need to hear his calculations.

{¶ 47} Dr. Ratliff testified that, in January 2021, the Care Center moved Dr. Wooden from a salary to a commission-based compensation structure, and he also proffered that Dr. Wooden's job duties and time requirements were reduced. While the magistrate asked questions during Dr. Ratliff's testimony, the magistrate also allowed the Care Center to

continue to ask questions to tease out a comparison of how much Dr. Wooden's compensation was reduced in comparison to the changes in her job duties. The magistrate stated, "ask Dr. Ratliff whatever you want to ask him. I will listen to the answer and try to figure it out." (Aug. 27, 2024 Tr. Vol. II at 300.) Dr. Ratliff ultimately testified that the difference in Dr. Wooden's compensation, after accounting for the change in compensation-structure and job responsibilities, was $3,549.48 at the beginning of 2021. *Id.* at 302.

{¶ 48} This court has found that "it is well within the scope of the trier of fact to believe or disbelieve any testimony it chooses." *Sturgill v. Ohio Dept. of Rehab. & Corr.,* 2004-Ohio-1735, ¶ 24 (10th Dist.). The trial court is "free to disbelieve any or all of the testimony as it desire[s]." *Id.* Such is the case here; the magistrate was free to disbelieve any or all of Dr. Ratliff's testimony, and we therefore overrule the Care Center's eighth assignment of error.

### H.  Assignment of Error No. 9

{¶ 49} In its final assignment of error, the Care Center argues that the trial court erred by not addressing its counterclaim for damages. The Care Center directs this court to paragraphs 15 and 16 of the Employment Agreement, which required Dr. Wooden to provide 90-days notice prior to her departure or to pay damages in the amount of $100 per day. The Care Center claims that Dr. Wooden "fell short by 23 days, resulting in $2300 in liquidated damages to Defendant on its counterclaim." (Appellant's Brief at 49.) We do not agree.

{¶ 50} "It is well-established that a 'material breach of contract by one party generally discharges the non-breaching party from performance of the contract.' " *Nious v. Griffin Const., Inc.,* 2004-Ohio-4103, ¶ 16 (10th Dist.), citing *Sun Design Sys., Inc. v. Tirey,* 1996 Ohio App. LEXIS 1524, *7 (2d Dist. Apr. 19, 1996). In his decision, the magistrate stated, "Given that the Defendant *materially* breached the Agreement the Defendant cannot hold the Plaintiff to the liquidated damages clause that was triggered by the Plaintiff not remaining for the complete 90 days triggered by her resignation." (Emphasis added.) (Mag.'s Decision at 13.) We therefore overrule the Care Center's ninth assignment of error.

## IV. CONCLUSION

{¶ 51} Having overruled all nine of the Care Center's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DINGUS, J., concurs.
JAMISON, J., concurs in part and dissents in part.

JAMISON, J., concurring in part and dissenting in part.

{¶ 52} Because I would find that the trial court erred in ruling that appellant did not cure its breach of contract, I respectfully concur in part and dissent in part.

{¶ 53} Critical to both the trial court and majority decisions is the finding that the parties orally modified the Employment Agreement to reduce appellee's in-office clinical duties from four days per week to three days per week. In support of this finding, both the majority and the trial court cite *RotoSolutions, Inc. v. Crane Plastics Siding, L.L.C.*, 2013-Ohio-4343 (10th Dist.). However, that case is procedurally distinguishable from this matter. In *RotoSolutions, Inc.*, this court simply held that the plaintiff's amended complaint sufficiently pled a valid modification. *Id.* at ¶ 21. We did not hold that there was in fact a valid modification. I believe that the evidence here fails to support a finding that the parties orally modified their contract via a course of conduct. The undisputed evidence established that appellee's in-office days were reduced for only one month before and one month after her maternity leave. That is insufficient to establish a course of conduct that alters an explicit contract term. *See St. Marys v. Auglaize Cty. Bd. of Commrs.*, 2007-Ohio-5026, ¶ 46 (oral modification of a contract demonstrated by parties' conduct "over a period of years"). This is especially so considering this accommodation occurred for two months at the tail-end of a three-year contract.

{¶ 54} It should also be pointed out that the trial court's decision in this regard is inconsistent with its finding that appellee did not waive the deadline by which appellant had to pay the bonus or offer her membership. There was testimony that the parties had agreed to table these discussions until appellee returned from maternity leave. There was no evidence that appellee was inquiring about her bonus or membership offer in the days

and weeks after September 1, 2021. If two months of reduced days in the office is a sufficient course of conduct to orally modify a contract, it stands to reason that the parties' course of conduct also orally modified the date by which appellant was required to pay a bonus or offer membership. It cannot be had both ways. Either both contract terms were validly modified, or neither were validly modified. I would submit that there was insufficient evidence to prove that either term was validly modified.

{¶ 55} Even if I were to believe the contract was validly modified, the job description in the agreement has nothing to do with the offer of membership. The job description and membership offer provisions are in separately identified sections of the contract. Indeed, in paragraph 7(B)(iv) of the agreement, it states "Employee shall continue to perform his or her job description . . . until Employee becomes a Member of the Practice." (Employment Agreement at 4.) It is the appellee's job description that dictates, not for her potential membership. Thus, by the agreement's own explicit terms, the job description contained therein was no longer valid as soon as appellee became a member. Thus, using that job description to rule in appellee's favor was incorrect.

{¶ 56} Simply put, appellant cured its breach of the employment agreement. Appellant offered her membership in the practice. Appellee simply chose not to accept because she did not like the terms of the offer. The fact that the offer included a requirement that appellee work four days per week again is irrelevant. The plain language of the contract contemplated additional unspecified terms of the membership offer. Paragraph 7(B)(iii) states, "[s]hould Employee accept the Membership Offer, both Employer and Employee shall work to prepare an acceptable new Operating Agreement as well as any other needed documents to facilitate Employee's membership in the Practice, including, if applicable, financing documents, effective January 1, 2022." (Employment Agreement at 4.) It was contemplated by the language of the agreement that there would be additional terms to appellant's membership offer. It was never contemplated that appellee would control the terms of her membership. Appellant is not liable simply because appellee and appellant could not negotiate mutually agreeable terms.

{¶ 57} It could be argued that allowing appellant to dictate, at its sole discretion, the terms of the membership offer is an illusory contract. "A contract is illusory when by its terms the promisor retains an unlimited right to determine the nature or extent of his

performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory." *Imbrogno v. MIMRx.com, Inc.*, 2003-Ohio-6108, ¶ 8 (10th Dist.).  Indeed, we have previously found an employee incentive plan to be an illusory contract where it was entirely within the employer's discretion whether to award bonuses and in what amount. *Pohmer v. JPMorgan Chase Bank, N.A.*, 2015-Ohio-1229, ¶ 24-25 (10th Dist.).  However, we also stated, albeit in dicta, that those types of incentive plans would not be illusory under all circumstances.  *Id.* at ¶ 25.  In cases, such as this one, where the employee is made aware of the terms of those plans, and assents to those terms in exchange for continued employment, such plans are not illusory contracts.  *Id.*

{¶ 58}  Because I would conclude that the trial court abused its discretion in adopting the magistrate's finding that appellant failed to cure its breach of appellee's employment agreement, I would sustain appellant's third assignment of error.

{¶ 59}  For these reasons, I respectfully concur in part and dissent in part.

_____